WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Steven Greschner, | No. CV-14-02352-PHX-GMS |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Andrew Becker, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 6.) For the following reasons, the Court grants the Motion in part and denies it in part.

**BACKGROUND**

Plaintiff describes himself as a "software, networking, security, and technology sales professional and executive." (Doc 1, Ex. 1, at 4.) He is the chief executive of Hummingbird Defense Systems, Inc., a Phoenix-based national security and technology firm. On August 26, 2014, the Center for Investigative Reporting ("CIR") and ProPublica, two non-profit news organizations, published an article on a purported security breach at an Arizona-based counterterrorism center by a computer programmer, a Chinese national employed by Hummingbird who had been contracted by the Maricopa County Sheriff's Office to build a facial recognition system for the counterterrorism site. The programmer had been originally hired by a woman with whom Plaintiff was romantically involved, and whom federal authorities allegedly suspected of international

espionage. The article detailed the programmer's flight to China in June 2007 with computer equipment possibly containing sensitive data he enjoyed access to by virtue of his employment—including the Arizona driver's license database, arrest files from county jails, and criminal history data—and an ensuing cover-up of the leak by local government and law-enforcement officials. The article further connected the incident to an ongoing immigration-fraud case involving Plaintiff's girlfriend. Plaintiff was interviewed by Defendants over the course of their investigation and publication of this article.

On September 8, 2014, Plaintiff filed a defamation suit in the Superior Court of Maricopa County. His First Amended Complaint ("FAC") was filed on October 17, and Defendants—the CIR, ProPublica, and various reporters and editors with those organizations—subsequently removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446.[1] (Doc. 1.) They now move to dismiss the FAC for failure to state a claim.

**DISCUSSION**

**I.  Legal Standard for Motion to Dismiss**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). When analyzing a complaint for failure to state a

---

[1] Upon removal, the federal court takes the case as it finds it, treating "everything that occurred in the state court as if it had taken place in federal court." *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963). Thus, for the purposes of this Motion to Dismiss, the Court treats the FAC as though it had been amended in federal court and considers its sufficiency against the standard set forth in the Federal Rules. As a note, Plaintiff also attempted to file a Second Amended Complaint after the case was removed; it was stricken by Court Order. (Docs. 7, 13.)

claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II.  Application

To state a claim for defamation under Arizona law, a plaintiff must plead: (1) a false and defamatory statement of and concerning the plaintiff; (2) an unprivileged publication of that statement to a third party; and (3) fault amounting to at least negligence on the part of the publisher or "actual malice," depending on the status of the plaintiff as a private or public figure and whether the statement at issue involves a matter of public concern. *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 1, 3, 730 P.2d 178, 180 (Ct. App. 1985) (citing Restatement (Second) of Torts § 558); *see also Citizen Publ'g Co. v. Miller*, 210 Ariz. 513, 517, 115 P.3d 107, 111 (2005) (discussing heightened protection for speech that touches on public issues). Defendants challenge the sufficiency of Plaintiff's pleading as to the first element.

### A.  Defamatory Statement

To be defamatory, "a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781, 787 (1989). A publication that impeaches the integrity and reputation of a corporation may be actionable by an individual if a reader of the article would understand it as referring to the corporate entity as well as its executives. *See Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977). In contrast, statements of opinion are protected under the First Amendment, and are generally not actionable. *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1293 (9th Cir. 2014) (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995)). In determining

1 whether a statement is a factual assertion capable of defamatory meaning or mere opinion, consideration should be given to "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Id.*

Plaintiff asserts the article contained a number of defamatory statements. Nevertheless, only a few of the statements identified in his amended pleading assail the reputation of either Plaintiff or his company.[2]

For example, in one instance the article refers to Plaintiff's technology company as "dubious." (Doc. 1, Ex. 1, at 26) This statement does not represent an assertion of verifiable fact. *See Obsidian Fin. Grp.*, 740 F.3d at 1293. It cannot fairly be characterized as either true or false, since there is no objective benchmark with which to measure the veracity of the Defendants' description. As to the allegation that a contract with Hummingbird to install security equipment at a Nevada Airport "ended in litigation," Plaintiff concedes that a lawsuit was initiated between his company and an electrician they had hired that arose from that project. (Doc. 1, Ex. 1, at 27.) Plaintiff's assertion that the article implied the airport's involvement in the lawsuit is, therefore, not fairly supported by the facts. (*See id.*)

Other allegations also fail to suggest that the article specifically defamed Plaintiff. For example, Plaintiff challenges Defendants' characterization of former Chief Deputy Hendershott's relationship with him as a "benefactor" and "friend," although he does not deny that the two were associates. (*Id.* at 25, 27.) This statement, on its face, is immaterial to Plaintiff's reputation because the Complaint does not plausibly explain how having Hendershott as a benefactor or a friend impugns his character. In the same vein,

---

[2] The article appears, at least at times, to use Plaintiff's name and the name of his company interchangeably. (*See* Doc. 17 at 12.) In context, statements that impeach the professional capabilities of Plaintiff, as Hummingbird's chief executive, may also constitute defamation of Hummingbird and vice versa. *See Peagler*, 114 Ariz. at 315, 560 P.2d at 1222.

- 4 -

Plaintiff asserts that several facts reported in the article are untrue, such as whether the Chinese programmer linked to the potential data breach had access to the Arizona Driver's License database, the timing in which Plaintiff founded his companies or the individual who introduced Plaintiff to the programmer. (*Id.* at 20–24, 26–29.) These statements are not capable of a defamatory meaning because they do not impugn the integrity of Plaintiff or his business, even if they are factually incorrect. On the other hand, although the extent to which Hummingbird's managerial decisions were delegated to Chinese companies and his girlfriend may call into question the credibility of Plaintiff's corporation, Plaintiff has not sufficiently pleaded the falsity of the information.

Only a few statements, taken in the light most favorable to Plaintiff, may give rise to liability for defamation. The article states that Hummingbird's "technical capabilities were lacking," (*id.* at 26), and that "Hummingbird . . . struggled to get government work." (*Id.* at 27.) These statements are capable of defamatory meaning because they have the potential to cast Plaintiff's business competency, acumen and the viability of his company in a negative light. Moreover, they are sufficiently factually based and their falsity has been adequately alleged. With respect to Plaintiff's girlfriend's hiring of the programmer, the article states that "Hummingbird, without vetting Fan further, sought his work visa, Greschner said, adding that he assumed law enforcement or other government officials took a closer look at the Chinese national." (*Id.* at 29.) Plaintiff pleads that, to the contrary, he investigated the programmer with Beijing police, the CIA, and the Maricopa County Sheriff's Office—who did a check with the FBI. (*Id.*) This statement is also potentially defamatory because it reflects poorly on the credibility of Plaintiff and Hummingbird as a security defense company by implying their employment vetting practices were subpar and lead to a breach of sensitive data.

### B.     Of and Concerning the Plaintiff

Under Arizona law, a statement is defamatory only if it "reasonably relate[s] to specific individuals." *Hansen v. Stoll,* 130 Ariz. 454, 636 P.2d 1236, 1240 (Ct. App. 1981). "[L]ibel of a corporation will support an action by an owner-shareholder if

reasonable readers would understand it to charge the individual with the same conduct as the corporation." *Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 491, 724 P.2d 562, 577 (1986).

In this instance, some of the allegedly defamatory statements do not refer to Plaintiff by name; rather, they describe acts or qualities of individuals wholly unrelated to him. Plaintiff may not challenge accusations—even if defamatory—against Hendershott, his ex-girlfriend, or the Chinese national programmer. (*see* Doc. 1, Ex. 1, at 26–29.) Meanwhile, the majority of statements that do concern Plaintiff and Hummingbird are not defamatory for the reasons stated above. Only the statements about Hummingbird's technical deficiencies, its struggle to get government work, and its deficient vetting of Fan are adequately pleaded as both defamatory and sufficiently linked to Plaintiff to sustain a claim for relief. Defendant's Motion to Dismiss is denied as to these allegations.

## CONCLUSION

For the foregoing reasons, the majority of Plaintiff's allegations fail to state a claim for defamation. He may pursue relief for the above specified statements only. All other counts are dismissed under Rule 12(b)(6).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 6) is **GRANTED** in part and **DENIED** in part.

Dated this 18th day of February, 2015.

_____
Honorable G. Murray Snow
United States District Judge