1    WO

2

3

4

5

6                **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9    Steven Greschner,                          No. CV-14-02352-PHX-GMS

10                    Plaintiff,                 **ORDER**

11   v.

12   Andrew Becker, et al.,

13                    Defendants.

14         Pending before the Court is Defendants Andrew Becker, et al.'s motion for

15   summary judgment (Doc. 75) pursuant to Federal Rule of Civil Procedure 56.  For the

16   following reasons the Court grants the motion.[1]

17                           **BACKGROUND**

18         Shortly after the September 11, 2001 terrorist attacks, Plaintiff Steven Greschner

19   founded an Arizona corporation, Hummingbird Defense Systems, Inc. ("HDSI").

20   Defendant's Statement of Facts[2] ("DSOF") ¶ 8.  At the time, Plaintiff's only experience

21   was in sales and HDSI's employees consisted of Plaintiff, his attorney, and his secretary.

22   DSOF ¶¶ 18, 20.  In 2001, HDSI entered into the government security software business

23   offering facial recognition and command and control software from third parties.  *Id.* ¶ 9,

24   _____

25         [1] As a result this Order, the motion for order to show cause, motion for temporary
     restraining order, and motion for preliminary injunction (Doc. 67) are moot.
26

27         [2] Plaintiff has failed to provide his own statement of facts in accordance with
     LRCiv. 56.1(b), which requires that a party opposing a summary judgment motion "must
     file a statement, separate from that party's memorandum of law," setting forth any
28   disputed or additional facts that would preclude summary judgment.  As a result, reliance
     will be placed solely on DSOF.

Ex. D at 89–90.  HDSI was involved in eleven major projects from December 2001 to March 2006.[3]  (Doc. 76, Ex D.)  Plaintiff admitted to doing "a lot of outsourcing" and did not provide any record that HDSI employed any engineers.  DSOF ¶ 19.  HDSI's "Director of Engineering," Kenneth Kaplan ("Kaplan"), who was not employed until August 2002, had no engineering degree and only had the job title because "it was granted to me by the owner of the company."  *Id.* ¶ 21.

In 2013, Defendants Ryan Gabrielson, a journalist, and Andrew Becker, an investigative reporter (collectively the "Reporters"), wrote an article (the "Article") on a potential data breach of the Arizona Counterterrorism and Information Center ("ACTIC"), which was published by Defendants ProPublica, Inc. ("ProPublica") and the Center for Investigative Reporting ("CIR") on August 26, 2014.  *Id.* ¶¶ 1–2.  The Reporters' year-long investigation included reviewing tens of thousands of pages of documents and conducting more than 50 interviews.  *Id.* ¶ 10.  The Article's initial draft was also edited by Defendants Amy Pyle, the Editor in Chief of CIR, and the managing editor of ProPublica.  *Id.* ¶ 12.  Entitled "Data breach mystery leads from Arizona counterterrorism site to China," the Article focused on a Chinese National named Lizhong Fan ("Fan") who had access to five million Arizona driver's license records and left Arizona in 2007 with hard drives, laptops, cellular phones, and the source code used at the ACTIC.  *Id.* ¶ 4, Ex. C.  At the time, Fan was an HDSI contractor, who was originally hired after Plaintiff's then-wife, Grace Li, recommended him for employment. *Id.* ¶ 5.

On October 23, 2014, this case was removed from Arizona Superior Court to this Court and Plaintiff filed his First Amended Complaint alleging that the Article falsely stated numerous facts amounting to defamation.  (Doc. 1.)  Defendants filed a motion to dismiss, which was granted in part and denied in part on February 18, 2015.  (Doc. 18.)

---

[3] These projects included work for the Maricopa County Sheriff's Office, Beijing Security Bureau, Ministry of Public Security of China, Elko Regional Airport, Phoenix Sky Harbor Airport, TSL Laboratory, TSA Worldwide RFID Trial, Arizona Counter Terrorism Investigation Center, Denver International Airport, and Regional Maritime Security Coalition.

1    The Court concluded that Plaintiff sufficiently alleged that the Article contained the
2    following potentially defamatory statements:   (1) HDSI's "technical capabilities were
3    lacking" (the "Technical Capabilities" statement); (2) "Hummingbird . . . struggled to get
4    government work" (the "Government Work" statement); and (3) "Hummingbird, without
5    vetting Fan further, sought his work visa, Greschner said, adding that he assumed law
6    enforcement or other government officials took a closer look at the Chinese National"
7    (the "Vetting" statement).  (*Id.*)

8                                   **DISCUSSION**

9    **I.     Legal Standard**

10           Summary judgment is appropriate if the evidence, viewed in the light most
11   favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to
12   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.
13   P. 56(a).  Substantive law determines which facts are material and "[o]nly disputes over
14   facts that might affect the outcome of the suit under the governing law will properly
15   preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
16   242, 248 (1986).  "A fact issue is genuine 'if the evidence is such that a reasonable jury
17   could return a verdict for the nonmoving party.'"  *Villiarimo v. Aloha Island Air, Inc.*,
18   281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248).  Thus, the
19   nonmoving party must show that the genuine factual issues "'can be resolved only by a
20   finder of fact because they may reasonably be resolved in favor of either party.'"  *Cal.*
21   *Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th
22   Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

23           Although "[t]he evidence of [the non-moving party] is to be believed, and all
24   justifiable inferences are to be drawn in [its] favor," the non-moving party "must do more
25   than simply show that there is some metaphysical doubt as to the material facts."
26   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The
27   nonmoving party cannot avoid summary judgment by relying solely on conclusory
28   allegations unsupported by facts.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

1   "A party asserting that a fact cannot be or is genuinely disputed must support the

2   assertion by: (A) citing to particular parts of materials in the record . . . or other materials;

3   or (B) showing that the materials cited do not establish the absence or presence of a

4   genuine dispute, or that an adverse party cannot produce admissible evidence to support

5   the fact."  Fed. R. Civ. P. 56(c).  "A trial court can only consider admissible evidence in

6   ruling on a motion for summary judgment," and evidence must be authenticated before it

7   can be considered.  *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).

8   **II.     Analysis**

9        Authentication is required for admissibility "and this condition is satisfied by

10  evidence sufficient to support a finding that the matter in question is what its proponent

11  claims."  *Id.* (internal quotation marks and citation omitted).  "In a summary judgment

12  motion, documents authenticated through personal knowledge must be 'attached to an

13  affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a

14  person through whom the exhibits could be admitted into evidence.'"  *Id.* at 773–74

15  (quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)).  Here,

16  Plaintiff attached 17 exhibits to his Response (Doc. 79) without authenticating the

17  exhibits with an affidavit.  Therefore, these exhibits cannot be considered in this Motion.

18  *Id.* at 773 (reaffirming that "unauthenticated document cannot be considered in a motion

19  for summary judgment").

20       **A.     Limited Purpose Public Figure**

21       Plaintiff is a limited purpose public figure.  Whether a person is a public figure can

22  be resolved by "looking to the nature and extent of an individual's participation in the

23  particular controversy giving rise to the defamation."  *Gertz v. Robert Welch, Inc.*, 418

24  U.S. 323, 351–52 (1974).  In considering whether an individual is a limited purpose

25  public figure, the Ninth Circuit has also considered the following:  (1) the existence of a

26  public controversy when the statements were made; (2) "whether the alleged defamation

27  is related to the plaintiff's participation in the controversy;" and (3) whether the plaintiff

28  "voluntarily injected itself into the controversy for the purpose of influencing the

controversy's ultimate conclusion." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266 (9th Cir. 2013).

### 1.    The existence of a public controversy

A public controversy existed over the use of HDSI technology in matters relating to national security.  A public controversy "must be a real dispute, the outcome of which affects the general public or some segment of it." *Id.* at 267 (internal quotation marks and citation omitted).  Here, the record provides numerous national publications from various authors related to the use of HDSI technology.

In December 2003, *USA Today* published an article on the privacy concerns involved in facial-recognition technology after a Phoenix middle school announced utilization of HDSI's technology to recognize sex offenders.  DSOF ¶ 36, Ex. P.  The Executive Director of the American Civil Liberties Union was quoted as stating that the technology was "not proven" and presented "huge privacy concerns." *Id.*  The article also quoted Kaplan discussing the capabilities of HDSI's technology.  *Id.*

On June 10, 2008, *AZ Central* published an online article that outlined how David Hendershott, the then acting Chief Deputy for the Maricopa County Sheriff's Office ("MCSO"), and Plaintiff, had spent time at the same hotel in China, how HDSI had installed a "biometric security system" for the Beijing Police Department in 2003, and that HDSI had provided $300,000 worth of facial-recognition technology to the MCSO in 2002.  *Id.* ¶ 42, Ex. U.

On July 23, 2008, *AZ Central* published an article regarding HDSI's involvement in receiving payments from MCSO as an unapproved vendor.  *Id.* ¶ 43, Ex. V.

On January 22, 2009, the *Phoenix New Times* published an article describing the MCSO's use of funds, including purchasing facial-recognition technology from HDSI for $200,000, and noted that "[a]s for Hummingbird, the Arizona Corporation Commission lists it as not being in good standing because it has not filed annual reports for two years." *Id.* ¶ 44, Ex. W.

/ / /

1    MCSO Deputy Frank Munnell also released a memo that, among other things,
2    questioned the effectiveness of HDSI's software stating that "it would be difficult to
3    argue that the Facial Recognition system has brought a positive return on investment."
4    *Id.* ¶ 45.

5    These articles are sufficient to establish that a public controversy existed regarding
6    the use of HDSI's technology in connection with government security and funds, which
7    was similarly addressed by the Article.

8         **2.    Relationship between the alleged defamation and Plaintiff's**
9              **participation in the controversy**

10   The allegedly defamatory statements made by Defendants, which refer to HDSI's
11   technical capabilities, involvement with the government, and vetting process, are all
12   related to Plaintiff's participation in the controversy as its founder.   These three
13   statements directly correlate with the public controversy discussed above.

14        **3.    Plaintiff's voluntary injection into the public controversy**

15   The Arizona Supreme Court has found that when an individual enters into a
16   "continuing relationship with the government and could be expected to receive the
17   scrutiny that eventually attends upon all major governmental efforts," an individual is a
18   limited purpose public figure.  *Dombey v. Phx. Newspapers*, 150 Ariz. 476, 485, 724 P.2d
19   562, 571 (Ariz. 1986).  Here, Plaintiff, as HDSI's founder, had business relationships
20   with the United States and Chinese governments as well as local governments such as
21   Maricopa County.  Plaintiff knowingly entered into relationships with the local and
22   national governments and therefore, should have expected to receive some degree of
23   media attention as a result.

24   Moreover, in a 2002 press release regarding HDSI's partnership with Viisage
25   Technology, a facial-recognition software company, Plaintiff was quoted promoting that
26   the partnership would "meet the added security requirements our customers are
27   demanding of us."  DSOF ¶ 33.  On August 1, 2005, Plaintiff was quoted in a *San*
28   *Antonio Business Journal* article stating that the Transportation Security Administration's

use of HDSI technology was "a compliment to the Department of Homeland Security model." *Id.* ¶ 39.  Plaintiff was again quoted in an October 2006 *East Valley Tribune* article entitled "Napolitano defends facial-recognition software" stating that HDSI's technology "allows police who have a photo of a crime suspect to compare it with the photos of people on file." *Id.* ¶ 40.  These articles demonstrate that Plaintiff "voluntarily injected" himself into the public controversy.  Accordingly, the Court finds that Plaintiff is a limited purpose public figure.

## B. Actual Malice

Since Plaintiff is a limited purpose public figure, Plaintiff must establish actual malice by clear and convincing evidence to recover damages under a defamation claim. *Gertz*, 418 U.S. at 351–52.  An inability to demonstrate actual malice by clear and convincing evidence is a proper basis for granting summary judgment.  *Anderson*, 477 U.S. at 254.  A statement is made with "actual malice" when it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).  "Actual malice" is a term of art and is unrelated to the ordinary meaning of malice as ill will.  *See, e.g.*, *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) ("Actual malice under the *N.Y. Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will.").  Neither maliciousness nor intent to harm is a necessary element of defamation with "actual malice."  *See Selby v. Savard*, 134 Ariz. 222, 225–26, 655 P.2d 342, 345–46 (Ariz. 1982) (finding defamation with "actual malice" where defendant "had actual knowledge of the probable falsity of the allegations and published them with, at the very least, reckless disregard of whether they were true or false").

### 1. Technical Capabilities Statement

Plaintiff has failed to raise a genuine issue of fact regarding the Article's potentially defamatory statement that HDSI's "technical capabilities were lacking."  As a result, the record sufficiently demonstrates that HDSI's "technical capabilities were lacking" throughout the course of HDSI's existence.  Regardless of Kaplan's job title as

"Director of Engineering," he had no engineering degree and Kaplan even admitted that many of HDSI's projects were "beyond the scope of [HDSI's] abilities." DSOF ¶ 21, Ex. J at 26. Further, a former HDSI contractor explained that HDSI "lacked the technical know-how" and "used everyone else's technology." *Id.* ¶ 51, Ex. Z at 98. Former HDSI Board Member Terry Stewart also stated: "[i]n my estimation, the projects were so poorly managed by [Plaintiff], that essentially what he was doing – he'd have to cover expenses for projects that hadn't been completed." *Id.* ¶ 52. Mark Gibbs, the Elko Airport Director, noted that their project with HDSI "never really worked," "never delivered a final, acceptable project," "has a terrible reputation now," and "failed miserably." *Id.* ¶ 48, Ex. Y at 92–94. Gibbs also stated that "[i]tems were installed very poorly." *Id.* ¶ 48.

Moreover, Plaintiff's claims rebutting Defendants' motion for summary judgment as to this statement are inadmissible and thus, Plaintiff has failed to establish a genuine issue of material fact as to whether Defendants acted "with knowledge that [the Technical Capabilities statement] was false or with reckless disregard of whether it was false or not." *N.Y. Times Co.*, 376 U.S. at 279–80. Accordingly, this Court finds that Defendants did not act with actual malice and summary judgment is granted as to the Technical Capabilities statement.

### 2. Government Work Statement

Plaintiff has not raised a genuine dispute of material fact as to whether the Defendants acted with actual malice in making the statement that HDSI "struggled to get government work." *Villiarimo*, 281 F.3d at 1061 (quoting *Anderson,* 477 U.S. at 248). Taken in context,[4] this statement was referring to the time period before Plaintiff partnered with Greg Chen in late 2002. As the Defendants' demonstrated, between HDSI's conception to late 2002, HDSI was only involved in two projects, one involving

---

[4] The Article continues after the statement at issue as follows: "*Hummingbird thus struggled to get government work. One project it won later, to install security equipment at a tiny Nevada Airport, ended in litigation when the system didn't work. The company had few prospects until late 2002*, when Greschner partnered with a man named Greg Chen." (Doc. 76, Ex. C (emphasis added).)

1   HDSI donating its technology to the MSCO and a second paid project with the Beijing

2   Security Bureau.  DSOF ¶ 27.  Plaintiff makes several claims that HDSI was involved in

3   numerous governmental projects during this time period.  Plaintiff, nevertheless, again

4   failed to support his contentions with any admissible evidence on the record.  In sum,

5   Plaintiff has not established any genuine issues of material of fact that Defendants acted

6   with actual malice when making this statement.  Thus, summary judgment is granted in

7   favor of Defendants as to this statement.

8                    **3.      Vetting Statement**

9              Finally, Plaintiff has also failed to "do more than simply show that there is some

10  metaphysical doubt as to the material facts" undergirding the Article's statement that

11  "Hummingbird, without vetting Fan further, sought his work visa, Greschner said, adding

12  that he assumed law enforcement or other government officials took a closer look at the

13  Chinese National."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  The Reporters made

14  this statement based on their interview notes with Plaintiff that shows that Plaintiff stated:

15  "I would assume they vetted Larry [Fan]. . . . If they were doing their job – they would

16  have done a background check on him and the family . . . I would assume that the vetting

17  process would have had to gone on."  DSOF ¶ 30.  Additionally, in Plaintiff's Response

18  to Defendants' Request for Admission No. 10, Plaintiff stated that "you have to assume

19  the person of interest cleared the background investigation and the investigation went

20  well," and that he told the Reporters that he "assumed the background check [on Fan]

21  took place with the wink of an eye."  *Id.* ¶ 29.

22             Based on the record as a whole, this statement is not false.  *Anderson*, 477 U.S. at

23  254 (finding that to survive a summary judgment motion, the question is "whether a jury

24  could reasonably find either that the plaintiff proved his case [of actual malice] by the

25  quality and quantity of evidence required by the governing law or that he did not.").  The

26  Plaintiff also fails again to set forth any admissible evidence to establish that Defendants

27  acted with reckless disregard of the truth of the statement.  The Reporters establish that

28  they conducted more than 50 interviews in addition to reviewing tens of thousands of

pages of documents before publishing their article.  DSOF ¶ 10.  While Plaintiff provided a copy of an email showing that at one point he supplied Raymond Churay of the MCSO with information relating to Fan, this litigation is the first time Defendants have been supplied with the email and it does not establish that Plaintiff took steps to personally look into Fan's background.  The record establishes that Plaintiff assumed that the law enforcement and government officials' investigations of Fan were sufficient. Accordingly, the Vetting statement is not defamatory as a matter of law.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment.

**IT IS THEREFORE ORDERED** that:

1.      Defendants' motion for summary judgment (Doc. 75) is **GRANTED**.

2.      Plaintiff's motions for order to show cause, temporary restraining order, and preliminary injunction (Doc. 67) are **DENIED** as **MOOT**.

3.      The Court directs the Clerk of the Court to dismiss Plaintiff's case and enter judgment accordingly.

Dated this 25th day of July, 2016.

Honorable G. Murray Snow
United States District Judge